UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

CYNTHIA AUGUSTYNIAK, DENISE
GIAMBRONE, & JULIE GLOVER, on behalf
of themselves and all others similarly situated,

                      Plaintiffs,

v.

LOWE'S HOME CENTER, LLC,;
LOWE'S HOME CENTERS, INC.;
LOWE'S COMPANIES, INC.; and
LOWE'S HIW, INC.,

                      Defendants.

**DECISION AND ORDER**

14-CV-00488-JJM

---

## INTRODUCTION

The parties have consented to proceed before a Magistrate Judge pursuant to 28 U.S.C. §636(c) [47].[1] Submitted for my consideration is the parties' "Joint Motion for Approval of Settlement Agreement and Conditional Certification of an FLSA Collective Action for Settlement Purposes" (the "Joint Motion") [42],[2] accompanied by "Plaintiffs/Class Counsel's Unopposed Motion for Approval of Common Fund Attorneys' Fees, Expenses and Costs" (the "Fee Motion") [45].

The parties argue that "the Settlement Agreement . . . is fair and reasonable". Joint Motion, p. 11. After carefully considering both motions and discussing my concerns with counsel on April 23, 2015 [49], I conclude that the parties have not established their entitlement to conditional certification of an FLSA collective action, and that in any event the proposed settlement is neither fair nor reasonable. Therefore, both motions are denied.

---

[1]     Bracketed references are to CM/ECF docket entries.

[2]     The "FLSA" is the Fair Labor Standards Act, 29 U.S.C. §§201, *et. seq.*

BACKGROUND

**Plaintiffs' Allegations**

Plaintiffs are or were employed by one or more of the defendants (collectively referred to as "Lowe's") as human resources managers ("HRMs"). According to the Joint Motion, "[p]laintiffs allege that [Lowe's] violated the . . . FLSA, and the New York Labor Law, §§651(5) and (6), 190(2) and (3) ('NYLL'), by failing to pay them overtime for all hours worked over forty each week". Joint Motion [42], p. 1.

That statement is not completely true. Of the three named plaintiffs, only Ms. Glover alleges an FLSA violation. Amended Complaint [25], p. 2 and ¶¶76 *et seq*. Ms. Augustyniak "falls outside of the two and three year statute of limitations provided for under the FLSA" (id., ¶29),[3] and therefore asserts claims only "pursuant to the [NYLL] and applicable regulations" (id., p. 2). Ms. Giambrone does likewise, since she was last employed by Lowe's on July 19, 2011 (id., ¶34), more than three years prior to the amendment of the Complaint to first assert an FLSA violation.

**The Lytle Action**

Counsel for the parties to this action were previously involved in another FLSA action against Lowe's in the United States District Court for the Middle District of Florida commenced by another HRM, Lizeth Lytle, on behalf of herself and others similarly situated (Case No. 8:12-cv-1848-T-33TBM) ("Lytle"). They describe that action as "parallel and virtually

---

[3] "The FLSA and NYLL claims are subject to different statutes of limitations . . . . A FLSA claim is subject to a two-year statute of limitations, unless there is a finding of willfulness in which case a three-year statute of limitations applies . . . . Under the NYLL, unpaid overtime claims are subject to a six-year statute of limitations." Francois v. Mazer, 2012 WL 653886, *4 (S.D.N.Y. 2012). *See also* 29 U.S.C. §255(a), NYLL §663(3).

identical" to this case (Joint Motion [42], p. 11), and suggest that the court-approved settlement of that action on November 7, 2014 "is almost identical in all significant respects to the settlement the parties propose for approval through this Joint Motion". Id., p. 3.

**The Proposed Collective Action Settlement**

The Joint Motion seeks "to certify a collective action for settlement purposes under the FLSA and send notice to all persons who worked as a HRM for [Lowe's] during a defined period [and] pay settlements to al members of the Plaintiff Class who file consents to join this lawsuit". Joint Motion [42], p. 4. Although the Amended Complaint also seeks class certification for the NYLL claims, the Joint Motion does not request certification of that class, for settlement purposes or otherwise. "Because this is a settlement agreement under the FLSA, and the parties are not asking for a settlement under [Fed. R. Civ. P. ("Rule")] 23, there are no absent class members." Id., p. 8.

The proposed FLSA "class"[4] consists of "all individuals who worked as a HRM at any Lowe's store outside of New York beginning April 18, 2011", and "individuals who worked as HRMs in a store in New York beginning April 18, 2008". Id., p. 5. The proposed settlement contemplates that the Lowe's would fund a payment of up to $3 million to class members and up to $1.5 million for attorney's fees. Id., p. 6. The $3 million would be based on an average payment of $3,700 for every person who opts in to the lawsuit, assuming that over 800 of the approximately 2,279 class members do so. Id., p. 7. The settlement would be apportioned among the opt-in

---

[4] The parties' reference to a FLSA "class", while utilized in this opinion, is not technically accurate: "certification of a collective action is a device to facilitate notice to potential class members and does not actually create a class of plaintiffs for a FLSA collective action." Myers v. Hertz Corp., 624 F.3d 537, 555, n. 10 (2d Cir. 2010), cert. denied, 132 S.Ct. 368 (2011).

plaintiffs based on the number of work weeks each individual opt-in plaintiff worked during the relevant class period; thus, a plaintiff who worked as a HRM during most of that period may receive over $8,000, while a plaintiff who worked as a HRM only a few weeks would receive less than $1,000.  Id.  However, in addition to their shares of the settlement, each of the three named plaintiffs would receive a $3,000 "incentive payment".  Id., p. 8.

Lowe's would reserve the right to opt out of the settlement if the amount to be distributed to the class were to exceed $3 million.  Id., p. 7.  Furthermore, Lowe's would not be obligated to segregate funds for the $3 million settlement (Settlement Agreement [42-1], §6(a)(i)), and can retain any unclaimed portion of that amount.  Id. §6(a)(ii).

**ANALYSIS**

A.     **Can This Action Be Conditionally Certified?**

In determining whether to certify a FLSA collective action, "the district courts of this Circuit appear to have coalesced around a two-step method, a method which . . . we think is sensible.  The first step involves the court making an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred . . . . The court may send this notice after plaintiffs make a 'modest factual showing' that they and potential opt-in plaintiffs 'together were victims of a common policy or plan that violated the law'." Myers, 624 F.3d at 554-55.  "At the second stage, the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs.  The action may be 'de-certified' if the record reveals that they are not, and the opt-in plaintiffs' claims may be dismissed without prejudice." Id. at 555.

The determination as to whether potential opt-in plaintiffs are "similarly situated" to the named plaintiffs requires consideration of what is at issue in the litigation. Here, Lowe's alleges that "Plaintiffs were exempt from the provisions of the . . . FLSA pursuant to 29 U.S.C. §213, 29 C.F.R. §541.100, and 29 C.F.R. §541.200, including the administrative and executive exemptions". Lowe's Answer to Amended Complaint [31], p. 14, ¶10. "[T]he exemption inquiry requires examination of the duties that the employee actually performs," Myers, 624 F.3d at 549.

The parties agree that "[t]he main issue in this case is whether HRMs exercised independent judgment and discretion on matters of significance . . . . The employee does not have to make final decisions on such matters to be exempt. Merely having influence, including making recommendations that are taken into consideration by the ultimate decision maker, suffices to meet the exemption. *See* 29 C.F.R. §541.202(c)." Joint Motion [42], pp. 15-16. Therefore, in order to obtain conditional certification, plaintiffs must make "some showing that there are other employees who are similarly situated with respect to their job requirements". Myers, 624 F.3d at 555.

In support of their request for conditional certification, the parties point to the fact that conditional certification was granted in Lytle (Joint Motion [42], p. 3, n. 2). However, that certification was granted *prior* to discovery. "Defendants' contentions pinpointing variations in the performance of Human Resources Managers duties . . . do not convince the Court that conditional certification is unwarranted. Instead, Defendants' arguments appear to be relevant to the application of various exemptions from the FLSA, which is more properly addressed after discovery is completed." Lytle v. Lowe's Home Centers, Inc., 2014 WL 103463, *5 (M.D.Fla. 2014).

Here, by contrast, the Joint Motion is *based* on the discovery which occurred in Lytle. "The substantive and procedural issues litigated extensively and contentiously in the *Lytle* Lawsuit are the same issues the parties would litigate in this case. Specifically, the main dispositive issue in both cases is the same: whether HRMs at Lowe's exercised discretion and independent judgment during the relevant period. That was the issue that was the subject of most of the written and deposition discovery in the *Lytle* Lawsuit, and which inevitably would consume much of the focus in this case. Having litigated this issue extensively, it is the opinion of counsel for both parties that the settlement is fair, adequate and reasonable." Joint Motion [42], p. 12.

Since the parties contemplate settling this case based on the discovery conducted in Lytle in lieu of conducting additional discovery, they must demonstrate that the Lytle discovery provides factual support for their allegation that "[t]he job duties of the [HRM] position are uniform throughout all Lowe's stores" (Amended Complaint [25], ¶77), and that "all [HRMs] perform their job duties in a similar . . . manner" (id., ¶94).[5]

However, the Joint Motion makes clear that it does not. "Many of the opt-in plaintiffs testified that they . . . participated in significant decisions at their stores, especially with respect to hiring. Many of the HRMs explained . . . that they had fifty percent input into all final hiring decisions at their stores. Many also testified that they led their store's recruiting efforts, were involved in disciplinary decisions, and counseled employees on work-related issues." Joint Motion [42], pp. 2-3. "[N]umerous HRMs . . . testified in the *Lytle* Lawsuit that they made significant

---

[5] The "modest showing" required for conditional certification "cannot be satisfied simply by unsupported assertions". Myers, 624 F.3d at 555. Instead, "the factual showing, even if modest, must still be based on some substance". McGlone v. Contract Callers, Inc., 867 F.Supp.2d 438, 443 (S.D.N.Y. 2012); Colson v. Avnet, Inc., 687 F.Supp.2d 914, 929-30 (D.Ariz. 2010) ("Although the burden for certifying a FLSA lawsuit for collective action notification is light, there are limits, and the district court cannot function as a rubber stamp for any and all claims that come its way under this statute").

decisions, having influence into almost all final decisions at their stores." Id., p. 15. "Given the discrepancy among HRMs on the critical dispositive issue in this case - the degree of discretion and judgment they exercised - it is likely that this case, even if the case is conditionally certified . . . would be decertified as a collective action." Id., pp. 16-17.

       These statements completely undercut the allegations of the Amended Complaint. Moreover, since that pleading was filed *after* the completion of discovery in Lytle, they also raise a serious question as to how plaintiffs' counsel could, consistent with Rule 11, allege in the Amended Complaint that the HRMs' job duties are uniform throughout all Lowe's stores. *See* O'Brien v. Alexander, 101 F.3d 1479, 1489 (2d Cir. 1996) (a litigant may violate Rule 11 by "reaffirming to the court and advocating positions . . . after learning that they cease to have any merit"); Vandenplas v. City of Muskego, 612 F.Supp. 342, 345 (D.C.Wis. 1985) (attorneys "have an obligation . . . to retreat from asserted claims once discovery fails to disclose a sufficient factual basis to support them").

       Not only does the proposed FLSA "class" encompass HRMs having different job duties, but it also includes employees whose FLSA claims are time-barred (such as named plaintiffs Augustyniak and Giambrone, who for that reason did not even assert FLSA claims in the Amended Complaint). While acknowledging that "the statute of limitations under the FLSA is three years or less" (Joint Motion [42], p. 5), the proposed class includes New York HRMs from April 18, 2008, "because the applicable New York wage and hour laws provide for a six-year statute of limitations". Id.

       However, "this is a settlement under the FLSA" (Joint Motion [42], p. 8). "[T]he FLSA consent requirement applies only to wage claims brought under the substantive provisions of the FLSA and does not apply to wage claims generally." Shahriar v. Smith & Wollensky

Restaurant Group, Inc., 659 F.3d 234, 247 (2d Cir. 2011).  "[T]here is no collective action under the wage and overtime provisions of the New York State Labor Law." Lamarca v. Great Atlantic and Pacific Tea Co., Inc., 2007 WL 2127354, *2  (N.Y.Sup. 2007), aff'd, 55 A.D.3d 487 (1st Dept. 2008).  See also Foster v. Food Emporium, 2000 WL 1737858, *3 (S.D.N.Y. 2000) ("[i]t would be improper to bring persons who have no Federal claim into this Court under the guise of a collective action").

Although the Amended Complaint requested class certification for the NYLL claims of HRMs similarly situated to named plaintiffs Augustyniak and Giambrone, the Joint Motion does not seek such certification.  Had such a class been certified, a joint notice addressing both types of claims could  issue, allowing employees to remain in or opt out of the NYLL class, and/or opt in to the FLSA collective action.  See Gortat v. Capala Bros., Inc., 2010 WL 1423018, *13 (E.D.N.Y. 2010 ), aff'd, 568 Fed. Appx. 78 (2d Cir. 2014) (Summary Order).  Even then, however, an employee whose FLSA claim was untimely would not be allowed to opt in to the FLSA collective action.  Id. ("Because the statute of limitations for FLSA claims is only three years while the NYLL claims have a six-year limitations period, some plaintiffs may be members of the [NYLL] class action, but ineligible to join the [FLSA] collective action . . . . Such a person would be entitled to notice of the class action and, if he attempts to opt in to the collective action, could simply be informed that he is ineligible").

Moreover, the proposed class appears overinclusive even as to FLSA claims. "Where wilfulness is *disputed*, the court applies the three-year statute of limitations for purposes of certifying a representative action." Cohen v. Gerson Lehrman Group, Inc., 686 F.Supp.2d 317, 331 (S.D.N.Y. 2010) (emphasis added).  "Where there has been no substantive discovery as to the appropriate temporal scope of the prospective class of member plaintiffs, and where the Plaintiff

has alleged a willful violation of the FLSA, it is prudent to certify a broader class of plaintiffs that can be limited subsequently, if appropriate." Id.

Here, however, there *has* been substantive discovery. "The extensive discovery in the *Lytle* Lawsuit, analyzed in the light most favorable to Plaintiffs, showed that they . . . could not establish lack of good faith or wilfulness on the part of Lowe's." Joint Motion [42], p. 3. "Said discovery disclosed facts . . . showing that there is *no basis* for a determination that any violation of the FLSA by [Lowe's] was willful". Proposed Settlement Agreement [42-1], p. 3 of 32 (emphasis added).

Therefore, not only do I give no weight whatsoever to plaintiffs' allegation that "[d]ue to Lowe's willful violation of the FLSA, a three-year statute of limitations applies to the FLSA violations pursuant to 29 U.S.C. §255(a)" (Amended Complaint [25], ¶119), but I again question how plaintiffs' attorney could make that allegation (after completion of the Lytle discovery) consistent with Rule 11.

For all of these reasons, I conclude that the parties have failed to demonstrate their entitlement to conditional certification of this proposed FLSA collective action . In light of that conclusion, I need proceed no further. However, in the interest of completeness (in the event that a reviewing court disagrees with that conclusion), I will also analyze the fairness of the proposed settlement.

**B.     Is the Proposed Settlement Fair and Reasonable?**

The proposed "Notice of Collective Action" advises potential opt-in plaintiffs that the court has "approved a settlement of this Lawsuit as set forth in a Collective Action Settlement Agreement". [42-1], p. 24 of 32. That statement "provides a tenor of authority that may sway or

influence potential opt-in plaintiffs receiving the notice". Hernandez v. Merrill Lynch & Co., Inc., 2012 WL 1193836, *5 (S.D.N.Y. 2012).

While "the standard for approval of an FLSA settlement is lower than for a class action under Rule 23", Aboud v. Charles Schwab & Co., Inc., 2014 WL 5794655, *4 (S.D.N.Y. 2014), that does not mean that "anything goes". "[S]pecial consideration must be paid to any proposed settlement in order to guard against an employer's possible coercion of a waiver or settlement from employees." Brown v. Mustang Sally's Spirits and Grill, Inc., 2013 WL 416303, *1 (W.D.N.Y. 2013) (Skretny, J.).

1. **Scope of the Proposed Class**

"Courts approve FLSA settlements when they are reached as a result of contested litigation to resolve a *bona fide* dispute . . . . If the proposed settlement reflects a reasonable compromise over contested issues, [it] should be approved." Hens v. Clientlogic Operating Corp., 2010 WL 5490833, *2 (W.D.N.Y. 2010) (Skretny, J.) (emphasis in original). Here, however, there is no "bona fide dispute" as to the appropriate statute of limitations for FLSA claims: since the parties concede that "there is no basis for a determination that any violation of the FLSA by [Lowe's] was willful" (proposed Settlement Agreement [42-1], p. 3 of 32), that statute of limitations is two years. 29 U.S.C. §255(a). Therefore, there is no bona fide reason for including HRMs falling outside that time period in this proposed collective settlement of FLSA (*not* NYLL) claims.[6]

---

[6] As previously discussed (pp. 7-8, *supra*), NYLL claims cannot be settled as a collective action.

As to HRMs in the proposed class who have no viable FLSA claims (either because such claims are time-barred or because their job duties would fall within an FLSA exemption), the proposed settlement amounts to a gift.  While I certainly do not wish to stand in the way of employees being compensated, I must "evaluate the *overall* fairness of the settlement and the benefit to the plaintiffs".  Dail v. George A. Arab Inc., 391 F.Supp.2d 1142, 1146 (M.D.Fla. 2005) (emphasis added).

"The benefits of a collective action depend on employees receiving accurate and timely notice so that they can make informed decisions about whether to participate." Morgan v. Family Dollar Stores, Inc., 551 F.3d 1233, 1259 (11th Cir. 2008), cert. denied, 558 U.S. 816 (2009). The proposed Notice of Collective Action ([42-1]) makes no mention of the fact that HRMs who *clearly* have no valid FLSA claims - including two of the three named plaintiffs - would opt in to the settlement, increasing the likelihood that the $3 million maximum settlement would be reached or exceeded, thereby giving Lowe's the right to opt out of the settlement pursuant to §6(a)(iii) of the Settlement Agreement ([42], p. 6 of 32).

However, while Lowe's could opt out of the settlement, those HRMs who opt in would be obligated to *remain* in the case even if the settlement did not materialize.  *See* proposed Consent Form ([42-1], p. 31 of 32: "I also understand that by agreeing to join this lawsuit, I will be part of the lawsuit going forward if the settlement does not become final for any reason.  That means, in part, that I may have to participate in discovery, including perhaps having to testify at a deposition").

I cannot in good conscience sanction such an arrangement.

2.     **Incentive Payments**

The Joint Motion also seeks approval for payment "of up to $3,000 for each of the three named Plaintiffs as incentive payments". [42], p. 20. "Such awards are justified when the class representatives expend considerable time and effort on the case, especially by advising counsel, or when the representatives risk retaliation as a result of their participation." Ingram v. The Coca-Cola Co., 200 F.R.D. 685, 694 (N.D.Ga. 2001).

"However, Courts have reduced, rejected or questioned incentive awards where named plaintiffs did not perform any extraordinary services to the class . . . . [W]hen representative plaintiffs make what amounts to a separate peace with defendants, grave problems of collusion are raised." In re Western Union Money Transfer Litigation, 2004 WL 3709932, *16 (E.D.N.Y. 2004). "Settlements entailing disproportionately greater benefits to named parties are proper only when the totality of circumstances combine to dispel the cloud of collusion which such a settlement suggests." Allapattah Services, Inc. v. Exxon Corp., 454 F.Supp.2d 1185, 1219 (S.D.Fla. 2006).

The parties suggest that in determining the fairness of a FLSA collective action settlement, "the Court should defer to the judgment of counsel unless there is evidence of collusion". Joint Motion [42], p. 12. However, by requesting incentive payments for plaintiffs Augustyniak and Giambrone, who have *not even asserted* FLSA claims, and by failing to describe what "extraordinary services" would entitle plaintiff Glover to such a payment, the Joint Motion does nothing to "dispel the cloud of collusion" suggested by such a request.

3.     **Attorneys' Fees**

Plaintiff's counsel seeks "an award of attorney's fees of $1,500,000.00, which is just shy of 1/3 of the Maximum Settlement Amount or the 'Common Fund' of $4,565,000.00, and

agreed to be paid by [Lowe's] as reflected in the Settlement Agreement" (Fee Motion [45], p. 30), along with expenses and costs (id.). Although the Fee Motion is filed separately from the Joint Motion [45], "the court has a duty to determine the reasonableness of the proposed attorneys' fees as part of the fairness determination". Dail, 391 F. Supp.2d at 1146.

"Where a proposed settlement of FLSA claims includes the payment of attorney's fees, the court must also assess the reasonableness of the fee award . . . . the Court must carefully scrutinize the settlement and the circumstances in which it was reached, if only to ensure that the interest of plaintiffs' counsel in counsel's own compensation did not adversely affect the extent of the relief counsel procured for the clients." Wolinsky v. Scholastic Inc., 900 F.Supp.2d 332, 336 (S.D.N.Y. 2012). *See also* Lytle v. Lowe's Home Centers, Inc., 2014 WL 6469428, *2 (M.D.Fla. 2014) ("FLSA provides for reasonable attorney's fees; the parties cannot contract in derogation of FLSA's provisions. To turn a blind eye to an agreed upon contingency fee in an amount greater than the amount determined to be reasonable after judicial scrutiny runs counter to FLSA's provisions for compensating the wronged employee").

Plaintiffs' counsel argues that "when attorneys create a common fund for the benefit of a class, a reasonable fee is based on the percentage of the fund bestowed on the class". Fee Motion [45], p. 15. He notes that "the Supreme Court has held that it is appropriate that the attorneys fees' be awarded on the entire maximum settlement common fund even though amounts to be paid to settlement class members who do not file claims . . . will remain the sole and exclusive property of Defendant". Id., p. 19, *citing* Boeing Co. v. Van Gemert, 444 U.S. 472, 480-81 (1980).

However, in Boeing, the Court noted that counsel's efforts resulted in a judgment against the defendant. "Boeing concludes [that] the judgment fund confers no benefit on class members who fail to claim against it . . . . We think that Boeing misreads the judgment. The District

Court explicitly ordered that 'plaintiffs in behalf of all members of the plaintiff class shall recover as their damages herein from the defendants the principal sum of $3,289,359 together with interest' . . . . Nothing in the court's order made Boeing's liability for this amount contingent upon the presentation of individual claims. Thus, we need not decide whether a class-action judgment that simply requires the defendant to give security against all potential claims would support a recovery of attorney's fees under the common-fund doctrine." 444 U.S. at 481, n. 5.

Unlike Boeing, in this case no judgment would be entered against Lowe's, nor would it be obligated to create a separate fund for payment of claims. "At no time shall Defendant have the obligation to segregate funds comprising the Individual Settlement Awards or the Maximum Potential Class Settlement Amount, and Defendant shall retain the exclusive authority over, and the responsibility for, those funds . . . . Defendant's sole monetary obligations to the Plaintiff Class under this Agreement shall be the Final Distribution Total (which shall be paid on a pro rata basis as set forth above) . . . . Any portion of the Potential Class Settlement Amount that is not distributed to the Plaintiff Class shall be retained by Defendant.". Proposed Settlement Agreement [42-1], §§6(a)(i),(ii), p. 7 of 32.

In response to a hypothetical question which I posed during proceedings on April 23, 2015 [49], plaintiff's attorney stated that he believed he would be entitled to the entire $1.5 million in fees even if only one HRM opted in to the settlement. While I applaud his chutzpah, I do not buy his reasoning. "In the typical common fund case . . . there is an actual fund, or at least a fixed amount of money representing the extent of the defendant's liability. Here, the Settlement Agreement establishes neither; it simply provides that [defendant] will satisfy those claims that are made by eligible class members, while retaining any unclaimed benefits." Parker v. Time Warner Entertainment Co., L.P., 631 F.Supp.2d 242, 265 (E.D.N.Y. 2009). "In any given case, class

member nonparticipation [in the settlement] may be attributed to a variety of factors . . . [such as] unappealing benefits that do not provide sufficient incentive for class members to invest the effort to submit a claim." Id. at 265-66. "[I]n a reversionary common fund or claims-made settlement, the defendant is likely to bear only a fraction of the liability to which it agrees." Id. at 266. Therefore, "the settlement should be valued on the basis of the number of claims that were made against it". Id. at 267.

While arguing for a fee award based on a percentage of the maximum value of the settlement, counsel concedes that "this Court has discretion to award attorneys' fees based on the lodestar method or the percentage-of-recovery method". Fee Motion [45], p. 20. If I were to award fees, under the circumstances of this case I would opt for the lodestar method. See Steinberg v. Nationwide Mutual Insurance Co., 612 F. Supp.2d 219, 222 (E.D.N.Y. 2009) ("courts have used either the lodestar method or awarded fees based upon a percentage of the common fund . . . . Here, the latter method would be unworkable because the exact amount paid into the common fund is as yet undetermined. The Court's analysis, then, will be guided by the lodestar").[7]

However, absent the submission of counsel's contemporaneous time records, there is no basis for a lodestar award. "For the court to determine what is reasonable, counsel must provide contemporaneous records of the time spent in working on the litigation." Sanchez v. JMP Ventures, L.L.C., 2015 WL 539506, *5 (S.D.N.Y. 2015).

---

[7] "Even where the percentage method is used, courts are encouraged to examine the lodestar calculation as a cross check on the reasonableness of the requested percentage." Fastener Dimensions, Inc. v. Massachusetts Mutual Life Insurance Co., 2014 WL 5455473, *6 (S.D.N.Y. 2014).

## CONCLUSION

For the foregoing reasons, both motions [42, 45] are denied. A conference will be held on May 8, 2015 at 2:00 p.m. to discuss further proceedings, including the status of the additional individuals who have already filed opt-in notices [19, 20, 23, 27, 28, 37, 43, 46].[8] Counsel may participate by telephone upon advance notice to chambers.

**SO ORDERED**.

Dated: May 1, 2015

/s/ Jeremiah J. McCarthy
Jeremiah J. McCarthy
United States Magistrate Judge

---

[8] "[N]othing . . . prevents plaintiffs from opting in to the action by filing consents with the district court, even when the notice . . . has not been sent, so long as such plaintiffs are similarly situated to the named individual plaintiff who brought the action." Myers, 624 F.3d 537, 555 n. 10.